# IN THE COURT OF APPEALS OF IOWA

No. 15-0612
Filed June 10, 2015

**IN THE INTEREST OF C.S., N.S.,**
**C.S., and D.S.,**
    **Minor Children,**

**S.S., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Terry L. Wilson, Judge.

A mother challenges the juvenile court order terminating her parental rights to four children. **AFFIRMED.**

Jane Odland of Odland Law Firm, P.L.L.C., Newton, for appellant.

Thomas J. Miller, Attorney General, Kathryn Lang, Assistant Attorney General, Michael K. Jacobsen, County Attorney, and Jonathan Noble, Assistant County Attorney, for appellee.

Andrew Tullar of Tullar Law Firm, P.L.C., Des Moines, for father.

Larry Pettigrew of Pettigrew Law Firm, P.C., Newton, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

A lack of stable housing persisted as the main barrier to the mother in this case reuniting with her four children, who were ages two, four, six, and eight at the time of the termination hearing. Asserting a close bond with the children, the mother now argues the State failed to offer clear and convincing evidence that severing the legal relationship was in their best interests.

On appeal, we make a fresh determination of the mother's rights, considering all of the facts in the record. *See In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). We give weight to the juvenile court's fact findings, but are not bound by them. *Id.* Under Iowa Code section 232.116(2) (2013), we give "primary consideration" to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Under those standards, we conclude termination was in the best interests of these four children. Housing is a basic physical need. A placement best aimed at satisfying the children's need for a safe and stable place to call home required termination of the mother's parental rights.

Failure to provide adequate shelter for their children has been a problem for this family for at least six years. The Iowa Department of Human Services (DHS) investigated allegations of the denial of critical care for failure to provide adequate living arrangements by the father[1] and mother in March 2009 and issued founded child abuse reports regarding the two oldest children; C.S. and

---

[1] The juvenile court also terminated the father's parental rights, but he is not a party to this appeal.

N.S. DHS found the family's apartment to be overcrowded—"packed with stuff from floor to ceiling." The family received services through 2011. Another DHS investigation occurred in August 2012; the report of a denial of critical care for failure to provide adequate shelter was not confirmed, but the DHS reported the children were at high risk of abuse due to the conditions of the home.

The current child welfare proceedings started in early May 2013 when police were called to the family's home in Jasper County because the father was threatening to commit suicide. Responding deputies noticed the house was cold and dark. They found four children—then aged six years, four years, two years and three months—living in the house without running water, heat, or electricity. The deputies also found other unsafe and unsanitary conditions. The juvenile court issued a removal order and adjudicated the children in need of assistance (CINA) on May 14, 2013. The parents cleaned up the house but nevertheless faced eviction in June 2013. The parents were underemployed, working on paper routes, and fell far behind in their rent, electrical, and water bills. The parents moved to a campsite on the Skunk River, where they lived in a tent from June through August 2013. The Family Safety, Risk and Permanency (FSRP) worker provided the parents with a list of low-income housing options.

The parents attended visitation with the children during the summer of 2013 but faced ongoing problems lining up transportation and managing their finances. The FSRP workers advised the parents regarding the need for more substantial employment and how to budget the money they earned. The workers

noted the parents would buy non-essential items for themselves but would be unable to afford lunch for their children during the visits.

After the summer of 2013, the parents stayed with friends and relatives. The parents split up during the course of the CINA proceedings. After the split, the mother would repeatedly tell the DHS case worker that she had a lead on securing her own housing, but the opportunities would always fall through.

The juvenile court held a permanency hearing in July 2014. In its fact finding, the court was skeptical of the mother's assertions she had signed a lease for a three-bedroom house that would accommodate the family. Yet despite the mother's minimal progress in the previous year, the court allowed her "one last opportunity" to secure adequate housing and demonstrate the ability to provide for the children's most basic needs. The court granted the parents an additional six months to reunify with their children.

During those six months, the mother was unsuccessful in obtaining a suitable place to live with the children. At the time of the termination proceedings, the mother was staying at a friend's residence with several other adults. The FSRP worker found the residence to be dirty with "a lot of garbage lying around" and was not a wholesome environment for children.

The State filed a petition for termination of parental rights on March 4, 2015. The court held a termination hearing on March 19, 2015. The mother was present at the hearing, but did not testify. On March 23, 2015, the court issued its order terminating parental rights under Iowa Code sections 232.116(1)(d), (f), (h) and (i). The court stated: "It is clear that the children cannot be returned to

either parent at this time. Neither parent claims that they are in position to have the children with them."

In her petition on appeal, the mother offers a one-sentence argument that the State "failed to prove by clear and convincing evidence that termination was in the best interest of the children due to the parent-child bond that existed." In support of her claim, she cites Iowa Code sections 232.116(2) and (3)(c). Because the mother does not cite section 232.116(1), we do not read her appeal as challenging the statutory grounds for termination.

We turn to her claim under sections 232.116(2) and (3)(c). As noted above, section 232.116(2) provides a mandatory framework for determining what is in the best interests of children in a termination of parental rights proceeding. *See P.L.*, 778 N.W.2d at 37. Section 232.116(3)(c) states a court need not terminate the relationship between the parent and children if there is clear and convincing evidence termination would be detrimental to the children because of the closeness of their relationship with the parent.

The record indeed shows a strong bond between the mother and the three oldest children. The case workers testified she enjoyed a lesser connection with the youngest child, D.S., because he was just a few months old when the children were removed from the parents' care. But despite being encouraged by the foster mother to set up additional visits with D.S. to deepen their relationship, the mother only once took advantage of that opportunity.

The record does not show termination would be detrimental to the well-being of the children because of the closeness of the mother's relationship with

them. Although we are convinced the mother loves all four children, we must consider whether the children "will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [their] developing needs." *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). The mother's chronic inability to provide a safe and stable home for her children outweighs the disadvantages that accompany termination. Accordingly, we affirm the juvenile court order.

**AFFIRMED.**